IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Vorys, Sater, Seymour and Pease LLP, | : | |
| Plaintif | : | Civil Action 2:12-cv-01072 |
| v. | : | Judge Sargus |
| IP of A Columbus Works 1, LLC, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

# DECISION

This matter of before the Court on plaintiff Vorys, Sater, Seymour and Pease LLP's ("Vorys") March 6, 2013 motion to dismiss the counterclaims asserted by defendants (doc. 24).

### I. Background

Vorys maintains that the IPofA Columbus Works 1 through 6, 8 through 18, 21 through 23, 25, 27 through 29, 31 and 32 entities owe a total of $251,130.2 for professional services, expenses and disbursements. The complaint makes the following allegations. On November 15, 2007, Vorys, Sater, Seymour and Pease LLP and the IPofA Columbus Works entities, who were known as Tenants in Common and TIC owners of real property located at 6200 East Broad Street, Columbus, Ohio, entered an engagement agreement. Defendants agreed that certain TIC owners were to manage the entities' legal affairs and direct plaintiff regarding its legal services. Paragraph 39 of the

1

complaint pleads that amounts allegedly due and owing Vorys, Sater, Seymour and Pease LLP from each IPofA Columbus Works entity.

Defendants filed counterclaims against plaintiff asserting fraud and intentional misrepresentation, legal malpractice, breach of fiduciary duty, breach of contract, unjust enrichment, and for an accounting.

The counterclaims make the following allegations. In 2005 and 2006, Edward H. Okun by and through an entity that he controlled known as the 1031 Tax Group, LLC ("1031 Tax Group") acquired six business that were engaged in the business of acting as a "qualified intermediary" for deferred exchanges of real property pursuant to section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031. Counterclaim at ¶ 4. Okun acquired and used these entities to fraudulently obtain monies from investors that he ultimately used for his own purposes. *Id.*

In 2005, IPofA Columbus Works, LLC, ("IPofA Columbus") an entity controlled by Okun, acquired the real property located at 6200 East Broad Street, Columbus, Ohio for the purposes of fraudulently marketing and selling portions of the property to investors. *Id.* at ¶ 5. IPofA Columbus and Columbus Works Virginia Trust, ("Trust") another entity controlled by Okun, executed a promissory note, mortgage, and security agreement and fixture filing evidencing a $27,000,000.00 loan from the Trust to IPofA Columbus. *Id.* at ¶ 6.

To perpetuate his scheme, Okun, and entities controlled by him, prepared and circulated a private placement memorandum to each of the defendants which described

2

in detail the alleged value of the real property and the alleged benefits of the proposed investment. *Id.* at ¶ 7. After reviewing the private placement memorandum, each defendant purchased an interest as tenants in common in the real property. *Id.* at ¶ 8.

In May 2006, Cordell Funding, LLLP ("Cordell") loaned $26,500,000.00 to Sam Trustee Services, LLC ("Sam Trustee") in capacity as trustee of the Trust. The Sam Loan was secured by a security interest in the Trust Note and Mortgage. The Trust endorsed the Trust Note to Cordell and executed a Collateral Assignment assigning the Trust's interest in the Trust Mortgage and other loan documents to Cordell. *Id.* at ¶ 10.

In May 2007, Sam Trustee defaulted on the Sam Loan. *Id.* at ¶ 11. In July 2007, a group of entities related to IPofA Columbus, Sam Trustee and the Columbus Works Trust filed for bankruptcy in the Southern District of New York. *Id.* at ¶ 12.

On October 19, 2007, Cordell issued a notice of foreclosure sale on the Trust Note and Trust Mortgage and filed a foreclosure action in a New York State Supreme Court. *Id.* at ¶ 13. In November 2007, additional Okun entities filed bankruptcy petitions. *Id.* at ¶ 14. By virtue of the automatic stay provision of 11 U.S.C. § 362, Cordell was restrained from proceeding with foreclosure action. *Id.*

During the bankruptcy proceedings, the property was primarily occupied by Lucent Technologies Inc. ("Lucent"). Under the terms of the master lease, Lucent was supposed to pay defendants, and the other tenants in common who are not parties to this action, a percentage of their net cash investment in the real property. Additionally, Lucent was also required to pay debt service to Cordell. The Lucent lease did not

3

generate enough revenue to pay both defendants and make debt service to Cordell. *Id.* at ¶ 16.

Gerald A. McHale, Jr. was appointed as Chapter 11 Trustee and took possession of the assets of the debtors. *Id.* at ¶ 19. McHale collected the rent from the Lucent Lease and made adequate protection payments to Cordell in the amount of the monthly payments due under the Trust Note. *Id.*

After the bankruptcies were filed, defendants hired plaintiff and its partner, Randall LaTour. *Id.* at ¶ 20. On January 24, 2008, plaintiff filed a motion in the bankruptcy court seeking payment of an alleged administrative claim for unpaid rent, additional rent, taxes, property insurance and other items by IPofA Columbus, and other IPofA debtors, McHale and the 1031 Debtors. After the motion was filed, McHale indicated to plaintiff that if LaTour continued to press the claim, McHale's only viable option was to move to reject the Master Lease in accordance with the provisions of 11 U.S.C. § 365(a). *Id.* at ¶ 22. On February 15, 2008, McHale filed a motion seeking to reject the Master Lease based on plaintiff's motion. Plaintiff was aware that if McHale was granted leave to reject the Master Lease, the bankruptcy estate would not have any further interest in seeking to prevent Cordell from foreclosing on the Trust Mortgage. McHale indicated he would not object to Cordell obtaining relief from the automatic stay in order to do so. It was also clear based on the motion to reject the lease, McHale would no longer make adequate protection payments to Cordell after February 2008 because such payments would not benefit the bankruptcy estate. *Id.* at ¶ 25.

4

On March 7, 2008, Cordell obtained relief from the automatic stay to enforce its right and remedies in connection with the collateral assignment. *Id.* at ¶ 26. In a March 11, 2008 hearing, McHale's attorney told the bankruptcy court that the Trustee and plaintiff had entered into a stipulation to permit McHale to reject the Master Lease and turn over the remaining monies generated by the Lucent Lease to plaintiff. McHale would not be making payment to Cordell. *Id.* On March 11, 2008, Cordell sent out notices of impending foreclosures sales of the Trust Note and Trust Mortgage. *Id.* at ¶ 30.

The monies held by the Trustee were transferred to plaintiff, but plaintiff failed to make the March payment to Cordell despite defendants' clear expectations that the payment would be made. *Id.* at ¶ 31. When the payment was missed, defendants began questioning plaintiff why this had occurred. *Id.* at ¶ 33. LaTour falsely claimed that plaintiff had not received the demand letters, but there was proof that the demand letters had been delivered to Vorys. LaTour was forced to admit that Vorys had received the letters as Cordell had claimed. *Id.* LaTour then falsely claimed that McHale had missed the March payment and that plaintiff was powerless to prevent the default. In an effort to conceal its actions and omissions, plaintiff filed an adversary action against Cordell, which was voluntarily dismissed within three months. *Id.* at ¶ 35.

On May 22, 2008, Cordell filed a foreclosure proceeding on the real property. *Id.* at ¶ 36. Although Vorys initially represented defendants in connection with the action, they retained new counsel in February 2009. *Id.*

## II.    Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007) (citing *Bell v. Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-124 (6th Cir. 1971).  In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading.  *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972).  Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail, *see McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).  A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted.  *See Roth Steel Prods.*, 705 F.2d at 155-56.

6

### III.   Arguments of the Parties

#### A.   Plaintiff

Plaintiff argues that defendants have asserted counterclaims against it in an effort to avoid paying what they owe. Plaintiff argues that the counterclaims must be dismissed because it is clear from the face of the pleadings that the claims all sound in legal malpractice and are subject to the one year statute of limitations that governs legal malpractice claims under Ohio law.

Plaintiff argues that all counts of the counterclaims are subsumed into a single legal malpractice claim because they are premised on allegations of professional misconduct in connection with Vorys' representation of the defendants. Plaintiff further argues that the counterclaims are barred by Ohio's one year statute of limitations for legal malpractice claims. Courts must examine the actual nature of the case rather than the form in which the action is pleaded to defeat attempts to avoid the statue of limitations by pleading alternative theories of recovery.

Plaintiff argues that under Ohio law, the limitations period begins to run when a cognizable event occurs that puts the client on notice of a need to pursue possible remedies against the attorney or when the attorney-client relationship for the particular transaction terminates, whichever occurs later. Plaintiff argues that defendants' counterclaims against Vorys are time-barred because those claims clearly accrued more than one year before the counterclaims were filed on February 14, 2013. Defendants' attorney-client relationship with Vorys ended in February 2009. Plaintiff maintains it is

7

clear that cognizable events occurred that should have alerted defendants to the purported malpractice claims more than one year before the counterclaims were asserted. An injured party need not be aware of the full extent of the injury; it is enough that some noteworthy event occurred which should have alerted a reasonable person that a questionable legal practice may have occurred. According to Vorys, constructive knowledge of facts, rather than actual knowledge of their legal significance, triggers the running of the limitations period under the discovery rule. The bankruptcy proceedings that defendants challenge all occurred almost five years before the counterclaims were asserted.

### B.    Defendants

Defendants argue that they have adequately pled a claim for fraud and unjust enrichment against plaintiff and that these claims are not barred by the one year statute of limitations for legal malpractice. Defendants assert that LaTour carefully and fraudulently concealed the fact that plaintiff had ignored Cordell's request for payment and the fact that plaintiff had caused the issue to begin with by demanding the monies be turned over to plaintiff, ignoring the trustee's warnings and triggering rejection of the master lease. Counterclaims at ¶ 34. Defendants argue that LaTour's lies and concealments were purposely designed to conceal his malpractice and insure that he would be able to continue to collect further legal fees. Defendants argue that under Ohio law, not all fraudulent conduct falls under the umbrella of a general malpractice claim. Defendants maintain that plaintiff lied for its own personal gain.

8

Defendants further argue that a factual issue exists as to when the defendants became aware of plaintiff's alleged malpractice. Defendants maintain that due to plaintiff's fraudulent concealment, they did not become aware of the malpractice until 2012. Although plaintiff maintains that defendants should have been aware because the bankruptcy proceedings were open to the public, plaintiff does not indicate which pleading or portion of the record should have alerted defendants to plaintiff's errors and omissions or when those documents were reviewed or made available to defendants. Defendants maintain that this issue cannot be resolved based on a review of the pleadings because it is a contested issue of fact.

Defendants argue that to the extent that Ohio Revised Code § 2305.11(A) bars their claim, it is unconstitutional. Plaintiff has brought a claim for breach of contract over three years after the termination of its legal representation of defendants. Defendants, on the other hand, believe that they are entitled to damages against plaintiff for breach of contract. Defendants maintain that plaintiffs cannot be entitled to sue for breach of contract pursuant to a fifteen year statute of limitations and that they would be denied the right to sue on the same contract based on a one year statute of limitations. Defendants argue that permitting attorneys fifteen times longer to sue on a written contract than their clients violates their right to equal protection under the laws in violation of the Fourteenth Amendment.

### IV.     Discussion

Under Ohio Revised Code § 2305.11(A) an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or failure to act and the client is put on notice of a need to pursue possible remedies against the attorney or when the attorney-client relationship end for that particular transaction or undertaking terminates, whichever occurs later. *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St. 3d 385 (1988). Under the discovery rule, a court must explore the particular facts of the action and determine:

> when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

*Id.* at 944 - 945. Defendants maintain they did not become aware of the alleged malpractice until 2012. The specific events defendants maintain constituted malpractice were the continued prosecution of the TIC claim despite knowledge that the Trustee would not make further payments to Cordell and that Cordell would obtain relief from the automatic stay to pursue its remedies under the Collateral Assignment.

The counterclaims state,"[a]fter the payment was missed, the Defendants began to question Plaintiff as to why this had been permitted to happen." Doc. 17 at 11, Counterclaims ¶ 33.  From the allegations in the counterclaims, it is apparent that as

10

early as March 2008, defendants were on notice of the need for further inquiry as to the cause of the damage. Subsequent events also should have alerted defendants to the extent and seriousness of their legal problems. In May 2008, Cordell filed a foreclosure action against the property. Although defendants may not have been aware of the full extent of their injury, "[i]t is enough that some noteworthy event . . . has occurred which does or should alert a reasonable person" that a questionable legal practice may have occurred. *Allenius v. Thomas, et al.*, 42 Ohio St. 3d 131, 133-134 (1989)(applying discovery rule in the context of medical malpractice). Because the factual allegations in the counterclaims demonstrate that defendants either knew or should have known that further inquiry was warranted in May 2008, the statute of limitations began to run in February 2009, when the attorney-client relationship between plaintiff and defendants ended. As a result, defendants' claims for legal malpractice must be dismissed.

Defendants further argue that not all of their claims are subsumed in their claim for legal malpractice. In *Endicott v. Johrendt*, No. 99AP-935, 2000 WL 796576 (Ohio App. 10 Dist., June 22, 2000), the court recognized that not all fraudulent conduct will always be subsumed by a malpractice claim. In such cases, a plaintiff must specifically allege that the attorney committed the action for his or her own personal gain. *Id.* at * 5. Here, defendants have alleged that plaintiff's actions were for its personal gain. In *Endicott*, however, the court concluded that the allegations that the attorneys made fraudulent statements in order to obtain a settlement with as little effort and delay as possible and to maintain a financially rewarding relationship with co-counsel in an unrelated case

11

were not sufficient to maintain a fraud claim separately from the underlying malpractice action. *Id.* Defendants here maintain that plaintiff billed for unnecessary work that was not beneficial to them. "When alleged fraudulent conduct is integral to a malpractice claim, the conduct does not independently extend the statute of limitations for malpractice." *Gullatte v. Rion*, 145 Ohio App. 3d 620, 626,(Ohio App. 2 Dist., 2000). Here, the alleged fraud is integral to the malpractice claim and the same acts comprise the conduct underlying both claims.

Defendants' reliance on *Divine Tower International Corp. v. Kegler, Brown, Hill & Ritter Co.,* 2007 WL 2572258 (S.D. Ohio September 4, 2007) is misplaced. Divine Tower International Corp.'s fraud and unjust enrichment claims were based on the allegation that the law firm billed the corporation for legal services rendered to members of the Divine family. The allegation of fraudulent billings were unrelated to the legal services performed for the corporation. Defendants' allegation here that Vorys billed them for legal services that did not benefit them is a garden variety fraud claim that is directly tied to their allegations of legal malpractice and, consequently, subsumed in the malpractice claim.

Defendants further argue that the Ohio Revised Code § 2305.11(A) is unconstitutional under the Fourteenth Amendment to the extent that it bars defendants' claim for breach of contract. Rule 5.1 of the Federal Rules of Civil Procedure governs the process for challenging the constitutionality of statues:

(a) Notice by a Party. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a . . . state statute must promptly:

(1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
. . .
(B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and

(2) serve the notice and paper on . . . the state attorney general . . . either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a). Defendants have not filed that notice. Until defendants properly raise this question of constitutionality, the Court will not consider it or certify it to the Ohio Attorney General under Rule 5.1(b).

## IV.    Conclusion

For the reasons stated above, plaintiff Vorys, Sater, Seymour and Pease LLP's ("Vorys") March 6, 2013 motion to dismiss the counterclaims asserted by defendants (doc. 24) is GRANTED in part. The Court has made no ruling on defendants' constitutional challenge to section 2305.11(A) of the Ohio Revised Code. The counterclaim for legal malpractice, fraud and intentional misrepresentation, breach of fiduciary duty, unjust enrichment, and accounting are DISMISSED as barred by the statute of limitations for legal malpractice.

s/Mark R. Abel
United States Magistrate Judge

13